UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT WRIGHT *et al.*,

                *Plaintiffs*,

 v.

ROBERT GOLDSTEIN, in his official
capacity as Commissioner of the Massachusetts
Department of Public Health,

            *Defendant*.

Civil Action No. 3-22-CV-11936

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND CLASS CERTIFICATION**

Pursuant to this Court's order dated January 28, 2026 (ECF 77), Plaintiffs and the Defendant (collectively, "the Parties") respectfully submit this memorandum of law in support of their Joint Motion for Final Approval of Settlement and Class Certification. The Parties are pleased to present to the Court this settlement of Plaintiffs' claims (the "Settlement"), which is the result of extensive, arm's-length negotiations and which provides fair, reasonable and adequate relief for the class members, as required by Fed. R. Civ. P. 23(e)(2). Furthermore, the provisionally certified class satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(2), and the Parties seek its certification for purposes of this settlement.

## BACKGROUND

Plaintiffs in this action allege that the Massachusetts Department of Public Health ("Department") violated the U.S. constitutional rights of Android smartphone owners living in, working in, and traveling through Massachusetts during the COVID-19 pandemic. Plaintiffs further allege that the Department worked with Google LLC ("Google") and other entities to implement a digital exposure notification system for use on Androids that would alert owners to the possibility of COVID-19 exposure. The exposure notification system first became available for download as an independent smartphone application in March 2021. Within two months, Google incorporated the exposure notification functionality into the device settings of Android devices (the "App"). The App was also known as "MassNotify v.3," "Exposure Notification Settings Feature-MA," and "Massachusetts Department of Public Health."

On November 15, 2022, Plaintiffs Wright and Kula filed a complaint asserting nine claims against the Department and Robert Goldstein, the Department's Commissioner ("Commissioner"). ECF 1. Plaintiffs alleged that the Department facilitated the automatic installation of the App onto over one million Android devices without their owners' knowledge or consent. ECF 22 (First

1

Amended Complaint) at 3-4 and ¶¶ 28, 29, 31, 35-37. They claimed that the App collected data from the Android devices on which it was installed in violation of the Fourth Amendment. *Id.* ¶¶ 32, 5, 77-86. They also claimed that the App's use of their devices' digital storage space constituted an uncompensated taking under the Fifth Amendment. *Id.* ¶¶ 87-95. The Department denies all of these allegations.

On February 27, 2023, the Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(l) and 12(b)(6). ECF 20-21. Instead of opposing that motion, Plaintiffs amended the complaint pursuant to Fed. R. Civ. P. 15(a)(l). ECF 22. The Amended Complaint added four individual plaintiffs, added the Governor of Massachusetts as a defendant, and asserted one claim each under the Fourth and Fifth Amendments to the United States Constitution, via 42 U.S.C. § 1983. *Id*.

On May 22, 2023, the Defendants filed a motion to dismiss the Amended Complaint. ECF 29-30. After briefing and argument, this Court granted that motion with respect to the Governor (releasing her from all claims) but otherwise denied the motion. ECF 47. On April 19, 2024, the remaining Defendant (Commissioner Robert Goldstein) answered the Amended Complaint, the parties appeared for a scheduling conference, and the Court issued a scheduling order to govern discovery and dispositive motion practice. ECF 50, 52-55. In November 2024, the parties jointly moved to continue the scheduling order deadlines for the express purpose of pursuing settlement negotiations. ECF 56. The Court allowed that motion. ECF 57-58.

Thereafter, the Parties engaged in productive negotiations. On or about November 10, 2025, the Parties executed a Settlement Agreement, which resolves Plaintiffs' claims for injunctive and declaratory relief. The Settlement Agreement generally provides that:

1)    The Commissioner or his designee shall (a) destroy any data in the Department's possession which the Department, exercising all due diligence, has located and is

aware of, that was collected from Android Devices through the App and (b) certify in writing to Plaintiffs that such data has been destroyed and will not be provided to third parties.

2)    The Commissioner shall not install or cause to be installed on Android Devices any technology similar to the App without the device owner's permission, except in accordance with the law, for a period of five years after this case is dismissed.

3)    Plaintiffs shall dismiss this lawsuit with prejudice and release any and all claims for injunctive or declaratory relief that were or could have been asserted in this lawsuit against the Commissioner, the Department, or any other Massachusetts state agency, official or employee.

ECF 68 at 10-20 (Exhibit 1 to [Proposed] Order Provisionally Approving Settlement Agreement and Settlement Class).

The Settlement Agreement also binds the following class:

"[A]ll persons who have or have had the COVID Exposure Notification Setting—known alternatively as 'MassNotify v.3,' 'Exposure Notification Settings Feature-MA,' and 'Massachusetts Department of Public Health'—on their Android Devices from March 18, 2021, until May 11, 2023."

*Id.* ¶ 5(e).

On November 10, 2025, the Parties jointly moved the Court for an order preliminarily approving the Settlement Agreement, for provisionally certifying a settlement class, and for approving the proposed notice to class members ("Notice to Class Members") and summary notice ("Summary Notice"). ECF 68. On December 15, 2025, the Court denied the Joint Motion without prejudice, finding the proposed notice was insufficient and ordering the parties to "pursue publication in the Springfield Republican (print) and Masslive (online), in order to ensure more representative notification of the settlement to this portion of the state." ECF 74.

On January 26, 2026, the Parties filed their Second Joint Motion for Preliminary Approval of Settlement Agreement. ECF 76. In the Second Joint Motion, the Parties agreed to publish the

Notice of Settlement Agreement and the Summary Notice in the Boston Herald (digital and print) and the Springfield Republican (print), and on MassLive.com (digital). ECF 76.

On January 28, 2026, the Court entered an order preliminarily approving the Settlement; provisionally certifying a settlement class pursuant to Fed. R. Civ. P. 23(e) and appointing Margaret Little of the New Civil Liberties Alliance as class counsel; approving the proposed Notice to Class Members and Summary Notice; and requiring that the parties publish Notice and Summary Notice in three specified publications. The Court set the deadline for objections on March 13, 2026, and scheduled a final approval hearing for March 31, 2026. ECF 77.

Pursuant to the Court's Order and to the Settlement Agreement, the Department caused the Notice to Class Members and Summary Notice to be printed in accordance with the Court's directive. *See* Declaration of Konstantin Tretyakov in Support of Parties' Joint Motion for Final Approval of Settlement and Class Certification ("Tretyakov Decl."), ¶¶ 9-10. Specifically, on February 13, 2026, Notice to Class Members and Summary Notice were published in the Boston Herald, the Springfield Republican, and Masslive.com. *Id*. and Exhibit 1 thereto.

The Notice to Class Members advises the public of the claims in this action and of the key terms of the Settlement, including the injunctive relief obtained by Plaintiffs. It explains that anyone who has or has had "the COVID Exposure Notification Setting—known alternatively as 'MassNotify v.3,' 'Exposure Notification Settings Feature-MA,' and 'Massachusetts Department of Public Health'—on [their] Android Device[s] from March 18, 2021 until May 11, 2023" is a class member. *See* Exhibit 1 to Tretyakov Decl. The Summary Notice to Class Members further advises that class members may object to the Settlement by filing a written objection to the Court on or before March 13, 2026, the deadline established by the Court. *Id*. Finally, the Summary Notice to Class Members directs class members to contact Margaret Little with questions via the

provided telephone number. *Id*. There have been no objections to the Settlement, nor were any questions received by NCLA either telephonically or by email. *See* Declaration of Margaret A. Little in Support of Motion for Final Approval of Settlement and Class Certification ¶10.

## ARGUMENT

### I.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval for any settlement of class action claims. Fed. R. Civ. P. 23(e). The decision to grant approval lies within the Court's discretion. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). The "[d]istrict court enjoys considerable range in approving or disapproving a class settlement, given the generality of the standard and the need to balance [a settlement's] benefits and costs." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st Cir. 2009). Courts may approve class action settlements so long as they are "fair, reasonable and adequate." *Cohen v. Brown Univ.*, 16 F.4th 935, 943 (1st Cir. 2021); *Preston v. World Travel Holdings, Inc.*, 2024 WL 3408705, at *3 (D. Mass. July 15, 2024).

Rule 23(e) requires courts to consider the following factors in determining whether to grant final approval of a settlement:

> (A) The class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Settlement satisfies each of these factors.

**Adequate Representation.** Adequate representation examines whether there were "conflicts of interest between named parties and the class they seek to represent." *Preston*, 2024

WL 3408705, at *3 (citation omitted). Here, no conflict exists. All the named plaintiffs allege that they had the App installed onto their Android devices without their knowledge or consent. ECF 22 (Amended Complaint) ¶¶ 1- 6. Each of them uninstalled the App soon after learning it had been installed. *Id*. And each of them enjoy the same protections under the U.S. Constitution as do all the other class members, which they alleged Defendant breached. Similarly, the relief applies uniformly to all class members: Defendant will destroy any data collected from Android owners via the App which the Department of Public Health, exercising all due diligence, has located and is aware of, and will refrain from similar conduct for five years, except in accordance with the law. This remedy applies equally to all Class Members.

Throughout this litigation, Plaintiffs have been represented by experienced counsel who vigorously prosecuted their claims. Ms. Little is highly respected among her peers and has decades of experience in complex regulatory, mass-tort, class-action, products liability, securities and commercial litigation. She has also shown commitment to pursuing constitutional claims in order to secure Americans' civil rights. In particular, she achieved victories in two Supreme Court actions: *Ricci v. DeStefano*, 557 U.S. 557 (2009) (violations of the Civil Rights Act of 1964) and *Axon Enterprise, Inc. v. FTC, Cochran v. SEC*, 598 U.S. 175 (2023) (federal court jurisdiction for SEC targets to challenge the constitutionality of SEC in-house adjudication).

**Arm's-Length Negotiation.** Through their experienced counsel, the parties engaged in settlement discussions for a period spanning more than a year. There was no collusion or fraud; rather, the settlement was achieved through their arm's-length negotiation. *See* Tretyakov Decl. ¶ 4; Little Decl. ¶ 4. The settlement is therefore entitled to a presumption of reasonableness. *In re Pharm Indus.*, 588 F.3d at 32-33.

**Fair, Adequate and Reasonable Relief.** In assessing whether a settlement is fair, adequate and reasonable, courts "balanc[e] the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).[1] Here, the settlement goes far to accomplish Plaintiffs' goals in this litigation. Specifically, Plaintiffs sought "[a]n injunction requiring Defendants to delete all records it has amassed through its Contact Tracing App from mobile devices where the device owner did not give permission for installation of the application," ECF 22 (Amended Complaint) at 31, and the Settlement requires the Commissioner to destroy any data collected through the Contact Tracing App which the Department, exercising all due diligence, has located and is aware of, and certify in writing that the data has been destroyed and will not be provided to any third party. ECF 68 at 13, ¶ 6 (Settlement Agreement). Plaintiffs also sought "[a]n injunction against continued installation of the [Department's] Contact Tracing App on private mobile devices without the knowledge or permission of device owners," ECF 22 (Amended Complaint) at 31, and the Settlement prevents the Department from engaging in this conduct for a period of five (5) years following dismissal of this action except in accordance with the law,

---

[1] Courts in the First Circuit often consider the *Grinnell* factors in determining whether a settlement is "fair, reasonable and adequate." *Hill v. State St. Corp.*, No. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015). The *Grinnell* factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range or reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). Because this action sought, and achieved, only declaratory and injunctive relief, factors (5), (7), (8) and (9) are not at issue and therefore not discussed.

Settlement Agreement ¶ 7. Much of the relief that was initially sought has been obtained through the Settlement.

The absence of objections to this settlement is a strong indicator that it is fair and reasonable. *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) ("[F]avorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval.") (citation omitted); *Hill*, 2015 WL 127728, at *8 ("The very positive reaction of the Settlement Class supports the approval of Settlement.").

The risk and cost of further litigation also support approval of the Settlement. Plaintiffs asserted that a formidable government entity breached their rights under the Fourth and Fifth Amendments to the U.S. Constitution. Plaintiffs initiated this action on November 14, 2022 (ECF 1), and following two rounds of motion to dismiss briefing, Defendant finally answered the complaint April 19, 2024 (ECF 50). Seeing this litigation through to a trial would likely have taken several more years. Discovery alone could have taken a year to complete, followed by a motion for class certification, summary judgment motions and pre-trial preparation, adding potentially another year to the timeframe for completion. Likewise, a trial would have been lengthy and expensive. At each step, the Commissioner and the Department would have asserted challenging defenses that could have derailed Plaintiffs' efforts, and there is no guarantee that Plaintiffs would have obtained any relief for the Class.

**Identical Treatment of Class Members.** The class is defined as: "all persons who have or have had the COVID Exposure Notification Setting—known alternatively as 'MassNotify v.3,' 'Exposure Notification Settings Feature-MA,' and 'Massachusetts Department of Public Health'—on their Android Devices from March 18, 2021, until May 11, 2023." Settlement Agreement ¶ 5(e). The Settlement treats these individuals equally. The Commissioner will be

required to destroy all data collected, with or without permission, through the App, which the Department, exercising all due diligence, has located and is aware of, and will not install the App on any person's Android without permission for a period of five years except in accordance with the law.

## II.    THE COURT SHOULD CERTIFY THE CLASS FOR PURPOSES OF THE SETTLEMENT

This Court has already determined that provisional class certification is appropriate, *see* ECF 77 ¶ 2. No facts or circumstances have changed, and class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) is appropriate for purposes of the settlement. As noted, the class is defined as: "all persons who have or have had the COVID Exposure Notification Setting—known alternatively as 'MassNotify v.3,' 'Exposure Notification Settings Feature-MA,' and 'Massachusetts Department of Public Health'—on their Android Devices from March 18, 2021 until May 11, 2023." Settlement Agreement ¶ 5(e). The requirements of Rule 23(a) are met.

*First*, "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The App was installed onto over one million Android devices (ECF 22 (Amended Complaint) ¶¶ 28-29), which far exceeds the guideline that forty class members satisfies the numerosity requirement. *García-Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

*Second*, "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A question is common if it is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) (citation omitted). Here, the only factual questions at issue in this litigation concern Defendant's conduct—whether and where the App was installed, and what the Department did with the data

gathered—are common to all class members. Relevant questions of law include whether Defendant's conduct comports with the Fourth and Fifth Amendments of the Constitution. None of these questions concern any aspects of Plaintiffs' conduct.

*Third*, the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This is satisfied where the claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members." *García-Rubiera*, 570 F3d. at 460. There is one course of conduct underlying the claims: the installation of the Apps on Androids without their owners' knowledge or permission, and the subsequent collection of data from the Apps. This factor is satisfied here.

*Fourth*, the "representative parties [have] fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4). There are no conflicts between the named plaintiffs' claims and those of any other member of the class, and they enjoyed representation from counsel who are "qualified, experienced," had have "vigorously conduct[ed]" this litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

Finally, class certification is appropriate under Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the . . . 'notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation omitted). This action fits the (b)(2) class mold. The remedy here applies to all Android device owners whose data was collected.

WHEREFORE, the Parties request that the Court approve the Settlement and certify the class for settlement purposes.

10

Respectfully submitted,

| | |
|---|---|
| ROBERT WRIGHT *et al, plaintiffs,* | ROBERT GOLDSTEIN, in his official capacity as Commissioner of the Massachusetts Department of Public Health, *defendant*, |
| By their attorneys, | |
| /s/ *Margaret A. Little* | By their attorneys, |
| Margaret A. Little, *pro hac vice* | |
| peggy.little@ncla.legal | |
| NEW CIVIL LIBERTIES ALLIANCE | ANDREA JOY CAMPBELL, ATTORNEY GENERAL |
| 4250 N. Fairfax Dr., Suite 300 | |
| Arlington, VA 22203 | /s/ *Konstantin Tretyakov* |
| Telephone: 202-869-5210 | Konstantin Tretyakov, BBO No. 698430 |
| | Assistant Attorneys General |
| | Office of the Attorney General |
| | Government Bureau |
| *ATTORNEY TO BE NOTICED* | One Ashburton Place |
| | Boston, MA 02108 |
| | (617) 963-2489 |

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system, will be sent electronically to registered participants and that copies will be sent to non-registered participants by email on March 26, 2026.

/s/ *Konstantin Tretyakov*

Dated: March 26, 2026

11